LORENZO v NOEL

Docket No. 151948. Submitted February 9, 1994, at Detroit. Decided
    September 7, 1994, at 9:10 A.M.

Linda Lorenzo brought an action in the Macomb Circuit Court
    against Lurlene Noel, claiming that the defendant sold her a
    defective home. The plaintiff alleged fraud and misrepresenta-
    tion by nondisclosure and fraud and mutual mistake and
    sought either rescission or damages. The court, George C.
    Steeh, III, J., granted summary disposition for the defendant,
    finding no questions of material fact. The plaintiff appealed.

The Court of Appeals *held:*

1. The suppression of a material fact, which a party in good
faith is duty-bound to disclose, is equivalent to a false represen-
tation and will support an action in fraud.

2. In the context of a real estate action based on fraud, not
negligence, an unreasonable danger need not be shown in order
to show liability.

3. The "as is" clause in the purchase agreement did not bar
the plaintiff's action. "As is" clauses allocate the risk of loss
arising from conditions unknown to the parties. Therefore, the
plaintiff's claim of mutual mistake is barred.

4. The defendant's claim that she knew nothing of the
alleged defect created a question of fact. The same is true of
conflicting evidence presented by two of the defendant's ex-
perts. The trial court erred in granting the defendant's motion
for summary disposition regarding the claim of misrepresenta-
tion by nondisclosure.

Reversed and remanded.

REFERENCES

Am Jur 2d, Fraud and Deceit §§ 144, 146, 158, 273; Vendor and
    Purchaser § 329.

Construction and effect of provision in contract for sale of realty by
    which purchaser agrees to take property "as is" or in its existing
    condition. 8 ALR5th 312.

Fraud predicated on vendor's misrepresentation or concealment of
    danger or possibility of flooding or other unfavorable water
    conditions. 90 ALR3d 568.

1. FRAUD — "SILENT FRAUD."

 The "silent-fraud" doctrine provides that a fraud arising from the suppression of the truth is as prejudicial as fraud that springs from the assertion of a falsehood; the suppression of a material fact, which a party in good faith is duty-bound to disclose, is equivalent to a false representation and will support an action in fraud.

2. VENDOR AND PURCHASER — DEFECTS IN PROPERTY — LIABILITY — DUTY TO WARN.

 A vendor of land who surrenders title, possession, and control of real property shifts all responsibility for the land's condition to the vendee and is not liable for any harm resulting from defects existing at the time of sale except where there is a failure to disclose to the vendee any concealed condition known to the vendor that involves an unreasonable danger or there is active concealment of such a condition; the vendor is also liable to those outside the land after the sale for harm resulting from a dangerous condition on the land until the vendee discovers or should have discovered the condition and has a reasonable opportunity to take precautions; under either exception, knowledge of a defect by the vendee relieves the vendor of any duty or liability.

3. VENDOR AND PURCHASER — REALTY — UNREASONABLY DANGEROUS DEFECTS.

 A buyer of realty need not show that a defect was unreasonably dangerous in order to show liability in a real estate action between the buyer and seller based on fraud, not negligence.

4. SALES — "AS IS" CONTRACTS — CONCEALED DEFECTS.

 An "as is" clause in a purchase agreement allocates the risk of loss arising from conditions unknown to the parties; the clause transfers the risk of loss where the defect reasonably should have been discovered upon inspection, but was not; the clause does not transfer the risk of loss where the seller makes fraudulent representations before the purchaser signs a binding agreement.

UAW-Chrysler Legal Services Plan (by *Donald D. Beller* and *Barbara G. Robb*), for the plaintiff.

*Glime Daoust, P.C.* (by *Donald G. Miller*), for the defendant.

Before: Gribbs, P.J., and Hood and H. E. Brown,* JJ.

Per Curiam. This case involves the sale of an allegedly defective home. Plaintiff appeals as of right from the trial court's order granting defendant's motion for summary disposition under MCR 2.116(C)(10). We reverse.

Plaintiff bought defendant's home in 1988 without having it inspected. The basement started leaking in 1989. In 1991, she had the paneling removed from the basement walls and discovered that the walls were bowed-in and cracked. She sued.

Plaintiff's amended complaint alleged fraud and misrepresentation by nondisclosure and, in a separate count, fraud and mutual mistake. She prayed for either rescission or damages. Plaintiff argues that the trial court erred in finding that there were no questions of material fact and that defendant was entitled to judgment as a matter of law.[1] We agree in part.

The beginnings of the "silent-fraud" doctrine alleged by plaintiff have been traced as far back as 1886: " 'A fraud arising from the suppression of the truth is as prejudicial as that which springs from the assertion of a falsehood, and courts have not hesitated to sustain recoveries where the truth has been suppressed with the intent to defraud.' " *Williams v Benson,* 3 Mich App 9, 18-19; 141 NW2d 650 (1966), quoting *Tompkins v Hollister,* 60 Mich 470, 483; 27 NW 651 (1886). Thus, "the suppression of a material fact, which a party in good faith is duty-bound to disclose, is equivalent

---

* Recorder's Court judge, sitting on the Court of Appeals by assignment.

[1] Plaintiff has abandoned any claims relating to the allegedly defective condition of the attic.

to a false representation and will support an action in fraud." *Williams* at 19.

In *Williams,* the sellers failed to inform the buyers that the premises had once been infested by termites. *Id.* at 13. When the sellers themselves purchased the motel, four years earlier, they had been informed of the infestation by the previous owner. *Id.* at 12-13. It was this previous owner who had discovered and assertedly exterminated the termites. *Id.* This Court held that the trial court properly granted summary disposition to the buyers regarding the question of liability premised on the "silent-fraud" doctrine; the Supreme Court reversed and remanded for trial in 378 Mich 721 (1966).

In *Ball v Sweeney,* 354 Mich 616; 93 NW2d 298 (1958), the sellers of a resort neglected to inform the buyers that they had been having problems with the Department of Health because the sewer system had been installed improperly. Although the Court did not discuss the "silent-fraud" doctrine, it noted that the plaintiffs' complaint alleged fraud on the basis of the sellers' "failure to inform" the buyers of the sewer problem. *Id.* at 618. The Supreme Court affirmed the trial court's decision to permit rescission of the contract.

A similar doctrine has been applied in the negligence area in the context of determining whether the former owner of land owes a duty to subvendees injured by a dangerous condition (contaminated water) that the seller failed to disclose to the original buyer. See *Christy v Prestige Builders, Inc,* 415 Mich 684, 693-694; 329 NW2d 748 (1982). The *Christy* Court noted that, at "common law, a land vendor who surrenders title, possession, and control of property shifts all responsibility for the land's condition to the purchaser. Caveat emptor prevails in land sales, and the vendor, with two

exceptions, is not liable for any harm due to defects existing at the time of sale." *Id.* at 694. "The first exception is the vendor's duty to disclose to the purchaser any concealed condition known to him which involves an unreasonable danger." *Id.* "Failure to make such a disclosure or efforts to actively conceal a dangerous condition render the vendor liable for resulting injuries." *Id.* "The second exception is that a vendor is liable to those outside the land for a dangerous condition on the land after the sale until the purchaser discovers or should have discovered it." *Id.* "Once the purchaser discovers the defect and has had a reasonable opportunity to take precautions, third parties such as subvendees have no further recourse against the vendor. Under both exceptions, then, knowledge of the defect on the part of the purchaser relieves the vendor of any duty or liability." *Id.* at 694-695.

This language has been relied upon in real estate cases that involve neither negligence claims nor third-party buyers. See, e.g., *Clemens v Lesnek,* 200 Mich App 456, 459; 505 NW2d 283 (1993); *Conahan v Fisher,* 186 Mich App 48; 463 NW2d 118 (1990); *Farm Bureau Mutual Ins Co v Wood,* 165 Mich App 9, 16; 418 NW2d 408 (1987); *Stewart v Isbell,* 155 Mich App 65, 75; 399 NW2d 440 (1986).

*Wood* and *Stewart* involved arguably dangerous conditions: an improperly installed wood-burning stove and an improperly capped artesian well. *Conahan* involved termites but was decided on other grounds. However, *Clemens* involved improper roof repairs and a defective septic system. The *Clemens* Court, without discussion, held that a buyer need not establish that a defect was unreasonably dangerous in order to show liability. *Id.* at 460-461. We agree with *Clemens* that, in the con-

text of a real estate action between a buyer and a seller based on fraud, not negligence, an unreasonable danger need not be shown.[2]

Defendant argues, however, that the "as is" clause in the purchase agreement bars plaintiff's action in this case. We disagree.

"As is" clauses allocate the risk of loss arising from conditions unknown to the parties. See *Lenawee Co Bd of Health v Messerly,* 417 Mich 17, 32-33; 331 NW2d 203 (1982). Thus, plaintiff's mutual mistake claim is therefore barred. "As is" clauses also transfer the risk of loss where the defect should have reasonably been discovered upon inspection, but was not. See *Conahan, supra* at 49-50. They do not, however, transfer the risk of loss where "a seller makes fraudulent representations before a purchaser signs a binding agreement." *Clemens, supra* at 460. That is, at least arguably, what happened here.

Plaintiff submitted the affidavit of Leon Mancour, a licensed contractor, who indicated that he inspected plaintiff's leaky basement after the wall paneling was removed.[3] He found that the stud wall onto which the paneling was nailed had been built two inches away from the wall to accommodate the inward bowing of the basement walls. He found large cracks in the walls behind the paneling that had been filled and painted over before the installation of the stud wall. Some of the studs had been shimmed to accommodate the bowing of the walls. Mr. Mancour further found evidence that the walls had continued to bow since the

[2] We note, however, that the bowing of the basement walls involved in this case could result in the collapse of the structure and therefore is, at least arguably, an unreasonably dangerous condition.

[3] Contrary to defendant's assertions, signed and notarized originals of affidavits by Leon Mancour and Theodore Dziurman submitted by plaintiff were filed with the trial court before the hearing regarding defendant's motion.

installation of the paneling, including separation of the caulk and paint previously applied, damage to the studs, and evidence of movement in the furring strips to which the paneling was nailed.

Theodore Dziurman, a civil engineer, also inspected the house after the paneling was removed. He found severe cracks and bowing in the basement walls and considerable evidence of long-term water leakage. He also observed evidence that the cracks had been caulked and painted over before the paneling was installed. He concluded that "[t]he wall failure had existed for at least thirty (30) years" and that the "basement walls [were] structurally unsound and should be repaired as soon as possible."

Defendant's claim that she knew nothing of the defective condition of the basement walls, rather than entitling her to summary disposition, creates a question of fact. The same is true of conflicting evidence given by two of defendant's experts. One indicated that there were cracks and bowing above grade that were obvious from outside the house. The other indicated that the home looked good and fully square from the outside.

The trial court erred in granting defendant's motion for summary disposition regarding the claim of misrepresentation by nondisclosure.[4]

Reversed and remanded. We do not retain jurisdiction.

GRIBBS, P.J., concurred in the result only.

[4] Counsel acknowledged at oral argument that some exhibits presented to this Court were not a part of the record below. Such documents were not considered. MCR 7.210(A)(1).